AO 106 (Rev. 04/10)  Application for a Search Warrant

# FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

## UNITED STATES DISTRICT COURT

for the

State and District of New Mexico

JUL 2 8 2015

## MATTHEW J. DYKMAN
### CLERK

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  15 mr 464 |
| Sharp cell phone,Model 306SH, IMEI 990005273230210 ZTE cell phone, Model Z970, IMEI 865891028995120 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, Incorporated herein by reference

located in the _____ District of ____New Mexico____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, Incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession/distribution of controlled substance |

The application is based on these facts:

See Attached Affidavit, Incorporated herein by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brett Finn, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/28/15

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

William P. Lynch, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF

SHARP CELL PHONE, MODEL "306SH,"
IMEI 990005273230210, WHITE IN COLOR,

And, ZTE CELL PHONE, MODEL "Z970,"
IMEI 865891028995120, BLACK IN COLOR,

BOTH CURRENTLY LOCATED AT
HOMELAND SECURITY
INVESTIGATIONS ALBUQUERQUE
OFFICE EVIDENCE LOCKER, 5441 Watson
Road SE, Albuquerque, New Mexico 87106.

Case No. _____

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brett Finn, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device described in Attachment A - which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I, Brett Finn, am employed as a Special Agent by the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), Border Enforcement Security Task Force, Albuquerque, New Mexico (BEST/ABQ) and

1

have been employed in this position since June 2010.  I am an investigative law enforcement

officer of the United States, and I am empowered by law to conduct investigations and make

arrests for felony offenses.  I have been a federal law enforcement officer for over five years.

      3.      I successfully completed eleven weeks of Criminal Investigator Training (CITP),

and the Immigration and Customs Enforcement Special Agent Training (ICE-SAT) at the

Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.  I hold a Bachelor's

Degree in Criminal Justice and a Master's Degree in Criminal Justice and Criminology from

Sam Houston State University in Huntsville, Texas.

      4.      As a HSI Special Agent, I am authorized and presently assigned to investigate

violations of Title 21, United States Code, Section 841 and other violations of federal law.  I

have also acquired knowledge and information about such offenses, and the various means and

methods by which they are furthered from numerous sources, including formal and informal

training from other law enforcement officers, investigators, and Special Agents; interviews of

informants and arrestees, and interviews of other knowledgeable individuals.

      5.      This affidavit is based upon information I have gained from my investigation, my

personal observations, training and experience, as well as upon information related to me by

other individuals, including law enforcement officers.  Since this affidavit is being submitted for

the limited purpose of securing a search warrant, this affidavit is intended to show only that there

is sufficient probable cause for the requested warrant and does not set forth all of my knowledge

about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched includes a SHARP CELL PHONE, MODEL "306SH," IMEI 990005273230210, WHITE IN COLOR, hereinafter "DEVICE 1."  The property to be searched also includes a ZTE CELL PHONE, MODEL "Z970," IMEI 865891028995120, BLACK IN COLOR, hereinafter "DEVICE 2."  DEVICE 1 and DEVICE 2 are currently located at Homeland Security Investigations, Albuquerque office, Evidence Locker, 5441 Watson Road SE, Albuquerque, New Mexico 87106.

7.      The applied-for warrant would authorize the forensic examination of the DEVICE 1 and DEVICE 2 for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELAVANT STATUTES

8.      This investigation concerns alleged violations of 21 U.S.C. § 841 (a) (1) and (b) (1) (B); 21 U.S.C. § 841 (a) (1) and (b) (1) (C).

9.      21 U.S.C. § 841 (a) (1) and (b)(1)(B) prohibits any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit; a mixture or substance containing a detectable amount of heroin, 100 grams or more.

10.     21 U.S.C. § 841 (a) (1) and (b)(1)(C) prohibits any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit; a mixture or substance containing a detectable amount of cocaine, 500 grams or less.

11.     21 U.S.C. § 841 (a) (1) and (b)(1)(C) prohibits any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit; a mixture or substance containing a detectable amount of methamphetamine, 50 grams or less.

## PROBABLE CAUSE

12.     On July 21, 2015, at approximately 9:40 am, New Mexico State Police (NMSP) Officer R. Woods was patrolling eastbound U.S. Highway I-40, near milepost 142, when he observed a silver, 2015 Chevy Impala also traveling eastbound on I-40.  The Chevy Impala was traveling approximately one and a half (1.5) car lengths behind a commercial motor vehicle.

13.     In his NMSP patrol unit, Officer Woods conducted a traffic stop on the Chevy Impala for the State of New Mexico traffic violation of following too closely.  This traffic stop was conducted in Bernalillo County, in the State and District of New Mexico.

14.     Jesus Omar MORALES-Anguiano (Year of Birth: 1981) was the driver and sole occupant of the 2015 Chevy Impala, which was a Hertz rental car bearing a Tennessee license plate, T81-92M.  The Hertz rental agreement listed Nancy Baxendale as the renter of the rental vehicle.  MORALES-Anguiano was also listed on the rental agreement, in a different section of the contract.

15.     Officer Woods issued a warning notice to MORALES-Anguiano for following too closely and told MORALES-Anguiano that he was free to go.  After MORALES-Anguiano walked back to the Chevy Impala, Officer Woods called out "Jesus" (MORALES-Anguiano). Officer Woods asked MORALES-Anguiano if it was ok to ask him more questions. MORALES-Anguiano voluntarily agreed.

4

16.     After some conversation, Officer Woods asked MORALES-Anguiano for consent to search the Chevy Impala.  MORALES-Anguiano voluntarily agreed and signed a consent form in English.

17.     Officer Woods deployed his police K-9 "Arras" on the Chevy Impala.  K-9 Arras is a trained a certified detection K-9 who is trained and certified in the detection of marijuana, cocaine, methamphetamine, heroin and other derivatives.  Officer Woods deployed K-9 Arras to conduct a sniff of the exterior and interior of the Chevy Impala.  K-9 Arras showed alert behavior on the interior of the Chevy Impala and showed an indication on the center console of the Chevy Impala.

18.     Officer Woods and NMSP Officer J. Campos searched the Chevy Impala.  During the search, Officers located a glass pipe concealed underneath the body panels surrounding the vehicle's transmission shifter.  Officers then removed the body panels surrounding the stereo's head unit.  Officers observed scratches on the bolts that secure the stereo in place, which indicated the stereo had been removed and re-installed.

19.     Concealed behind the stereo's head unit, Officers found two black-tape wrapped packages. One black-tape wrapped package contained a dark-colored substance.  The other black-tape wrapped package contained three smaller packages.  The smaller packages were separated.  One of the smaller packages contained a dark-colored substance.  The second, smaller package contained a compacted, powdery substance.  The third, smaller package contained a crystalline substance.  Based on their training and experience, Officers recognized the substances to be illegal drugs.

20.     The two packages containing the dark substance field-tested positive for the properties of heroin.  The total gross weight was approximately 394.09 grams (.86 pounds).

5

21.     The smaller package containing the compacted, powdery substance field-tested positive for the properties of cocaine.  The total gross weight was approximately 29.66 grams (.06 pounds).

22.     The smaller package containing the crystalline substance field-tested positive for the properties of methamphetamine.  The total gross weight was approximately 28.46 grams (.06 pounds).

23.     NMSP Officers arrested MORALES-Anguiano and transported him and the evidence to the NMSP Office in Albuquerque.  Homeland Security Investigations (HSI) Special Agents and HSI Task Force Officers (TFOs) met with NMSP Officers at their office.

24.     After being advised of his Miranda rights, MORALES-Anguiano requested an attorney.

25.     HSI Special Agents took custody of MORALES-Anguiano and the evidence pursuant to Title 21, United States Code, § 841 (a)(1) and (b)(1)(B), (b)(1)(C).

26.     In my training and experience, I recognize the seized controlled substances to be amounts for distribution.

27.     MORALES-Anguiano indicated that two cell phones were his property.  SHARP CELL PHONE, MODEL "306SH" IMEI 990005273230210, WHITE IN COLOR (DEVICE 1); and ZTE CELL PHONE, MODEL "Z970," IMEI 865891028995120, BLACK IN COLOR (DEVICE 2).

28.     DEVICE 1 and DEVICE 2 are currently in the lawful possession of Homeland Security Investigations. Therefore, while Homeland Security Investigations might already have all necessary authority to examine DEVICE 1 and DEVICE 2, I seek this additional warrant out

6

of an abundance of caution to be certain that an examination of DEVICE 1 and DEVICE 2 will comply with the Fourth Amendment and other applicable laws.

29.     DEVICE 1 and DEVICE 2 are currently in storage at Homeland Security Investigations, Albuquerque office, Evidence Locker, 5441 Watson Road SE, Albuquerque, New Mexico 87106.  In my training and experience, I know that DEVICE 1 and DEVICE 2 have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when DEVICE 1 and DEVICE 2 first came into the possession of Homeland Security Investigations.

30.     As a Special Agent with HSI my primary duties include, but are not limited to, the investigation into violations of the Controlled Substances Act, Title 21.  Based on my experience and training, I know the following:

    a.  Individuals who smuggle controlled substances will often use cellular phones to communicate and facilitate their illegal smuggling activities.

    b.  Individuals who deal in narcotics smuggling will often use cellular phones to store contact information related to those involved in illegal smuggling activities.

    c.  In addition, narcotic smugglers maintain contact with associates through text messages and phone calls.  Narcotic smugglers often use coded language in their text message communication to in an attempt to conceal their illegal activities from law enforcement.

    d.  Individuals involved in the narcotic smuggling business will often store photographs of evidence of crimes in their cellular phones.

e.  A cache of contact information, dialed, received or missed calls, text messages sent, received, or placed in draft status, and photographs can be found in cell phones.

f.  I have reason to believe that the electronic DEVICE 1 and DEVICE 2, described above, were used as means of communication by Jesus Omar MORALES-Anguiano and the person(s) he was unlawfully receiving/distributing controlled substances from/to.  As such, I have further reason to believe DEVICE 1 and DEVICE 2 were utilized for such communication and holds the stored information described above.

31.   DEVICE 1 and DEVICE 2 have been in the exclusive custody/control of law enforcement since it was seized on July 21, 2015.  Therefore, it is likely that the information that was stored in DEVICE 1 and DEVICE 2 on July 21, 2015 remains on DEVICE 1 and DEVICE 2 today.  Furthermore, using technology, it may be possible to recover evidence which may have been intentionally or inadvertently erased.

## TECHNICAL TERMS

32.   Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of

8

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of DEVICE 1 and/or DEVICE 2.

33.     Based on my training, experience, and research, I know that DEVICE 1 and DEVICE 2 have the capabilities of a wireless telephone, as listed above in Paragraph 32, subsection a.

34.     In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used DEVICE 1 and/or DEVICE 2.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

9

Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

36.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how DEVICE 1 and/or DEVICE 2 were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on DEVICE 1 and/or DEVICE 2 because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

10

team and passed along to investigators.  Whether data stored on a computer is

evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of

the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who

used it, and when, sometimes it is necessary to establish that a particular thing is

not present on a storage medium.

  37. *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of DEVICE 1 and

DEVICE 2 consistent with the warrant.  The examination may require authorities to employ

techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of DEVICE 1 and/or DEVICE 2 to human inspection in order to determine

whether it is evidence described by the warrant.

  38. *Manner of execution.*  Because this warrant seeks only permission to examine

devices already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

39.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of DEVICE 1 and DEVICE 2 described in Attachment A to seek the

items described in Attachment B.

Concurred with by AUSA Paul Mysliwiec, 07/28/2015.

Respectfully submitted,

Brett Finn
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on: ___July 28, 2015___

Honorable William P. Lynch
United States Magistrate Judge